UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ADRIENNE JONES,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Civil Action No. 20-5309 (SDW)

**OPINION**

June 22, 2021

**WIGENTON**, District Judge.

Before this Court is Plaintiff Adrienne Jones's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Sharon Allard's ("ALJ Allard") denial of Plaintiff's claim for supplemental security income ("SSI") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Allard's factual findings are supported by substantial evidence and that her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL AND FACTUAL HISTORY**

    **A.  Procedural History**

Plaintiff filed for SSI on June 13, 2014, alleging disability beginning on January 1, 2008. (D.E. 7 (Administrative Record ("R.")) at 313–18.) The Social Security Administration denied

Plaintiff's application at the initial and reconsideration levels. (R. 166–70, 173–75.) Plaintiff received a hearing before ALJ Allard on December 21, 2016, and the ALJ issued a written decision on March 23, 2017, finding that Plaintiff was not disabled. (R. 145–56.) Plaintiff subsequently sought Appeals Council review, and the Appeals Council remanded her case on November 16, 2017, ordering further evaluation of Plaintiff's mental impairments, further consideration of Plaintiff's residual functional capacity ("RFC"), and new vocational testimony. (R. 162–64.) ALJ Allard held a second hearing on July 12, 2018, and issued a second decision denying benefits on November 5, 2018. (R. 12–57.) Plaintiff again sought Appeals Council review, which was denied on March 5, 2020. (R. 1–6, 309–12.) Plaintiff subsequently filed the instant appeal in this Court. (D.E. 1.) The parties timely completed briefing and Plaintiff did not file a reply. (D.E. 12, 13.)

**B. Factual History**

Plaintiff is forty–three years old and lives in Rahway, New Jersey. (R. 191, 313.) She has a tenth–grade education and has not worked since 2008. (R. 39, 73.) Plaintiff previously worked as a caregiver at an in–home childcare center run by her sister–in–law in 2007, for approximately two months as a sales associate at Burlington Coat Factory in 2004, and as a sales associate in another department store from October 1997 until March 1998. (R. 73–75, 321, 323, 335–36.) She alleges that she stopped working at the childcare center because she could not physically keep up with the children, whose ages ranged from six months to seven years old. (R. 75–76.)

On June 13, 2014, Plaintiff applied for SSI benefits, claiming disability as of January 1, 2008, because of obesity, diabetes, high blood pressure, and asthma. (R. 335.) In her function report, she alleged challenges with personal care, stating that she needed assistance with bathing and using the toilet. (R. 343.) She uses medical transportation to go to the doctor, and her mother does grocery shopping for her. (R. 79.) She does not drive because she never received her license,

2

saying that she is "too large" and never learned. (R. 345.) Plaintiff also reported depression and anxiety, claiming that she generally does not go out alone because she is scared that she will have panic attacks. (R. 370.) However, she reported that she was able to prepare simple meals, fold laundry, do the dishes while seated, handle money, shop by mail for clothing, and talk on the phone. (R. 344, 346–47, 369–71.) She also denied having problems paying attention, getting along with authority figures, finishing what she starts, or following written or spoken instructions. (R. 372–73.) She generally spends her time watching TV, talking on the phone with friends and family, browsing the Internet, and reading books. (R. 371.)

The record contains notes from multiple doctors and other practitioners who treated Plaintiff for psychological and physical impairments, beginning in 2014. The following is a summary of the evidence.

In April 2014, Plaintiff was admitted to Robert Wood Johnson University Hospital in Rahway for fifteen days to drain an abscess. (R. 421–37.) Plaintiff was noted to be alert and able to independently walk, eat, and use the bathroom. (R. 425.) Plaintiff was additionally diagnosed with new onset diabetes mellitus and hyperglycemia, and the discharge papers noted that she was obese and at risk for deep vein thrombosis. (R. 425, 429–30.) She was prescribed blood pressure medication, diabetes medication, and iron supplements and was told to adhere to a diabetic diet of 1,000 calories per day. (R. 423–24.) When Plaintiff visited her primary care provider two months later for a routine checkup, he noted that she had morbid obesity, asthma, diabetes, and high blood pressure and prescribed a 1,000 calorie per day diet, glucometer, insulin, diabetes testing equipment, and blood pressure monitor. (R. 438.)

Kate Waldron, A.P.N. ("Nurse Waldron"), treated Plaintiff regularly between October 2014 and December 2016 at a community health center. (*See* R. 452–80.) Nurse Waldron

3

diagnosed Plaintiff with Moderate Recurring Depression, Major Depressive Disorder, Bipolar II Disorder, and Obsessive-Compulsive Disorder ("OCD") and recorded that Plaintiff suffered from severe anxiety and difficulty sleeping. (R. 454–55, 460, 469, 472, 475.) Plaintiff's mental function reports typically indicated that, although her mood was often "depressed and anxious," she was generally "alert and interactive," with normal grooming, speech, memory, cognition, insight, concentration, and judgment. (R. 452–80.) However, her thought processes sometimes contained obsessions and compulsions, and her judgment and insight were occasionally recorded as only "partially intact." (R. 461–62, 469, 474.) Plaintiff was prescribed psychotherapy and various medications for her depression, anxiety, and insomnia. (R. 462.) Nurse Waldron noted that Plaintiff's anxiety and OCD symptoms improved with medication. (R. 456, 464–65, 473.)

In December 2014, Dr. Rambhai Patel, a state medical examiner, evaluated Plaintiff with respect to her disability application. (R. 439–41.) Dr. Patel noted that Plaintiff's diabetes caused her to feel shaky when her sugar level decreased but that she had no symptoms when her sugar was elevated, apart from frequent urination, which happened two to three times a week. (R. 439.) With respect to Plaintiff's hypertension, she complained of dizziness and nose bleeds two to three times a month. (*Id.*) Plaintiff also reported weekly asthma "of a long duration," during which episodes she experienced shortness of breath, coughing, and wheezing and for which she used an inhaler several times a day. (*Id.*) Dr. Patel noted that Plaintiff walked with a "normal gait," even without an assistive device, and that she could perform fine and gross movements in both hands with a normal grip. (R. 440–41.) He diagnosed her with diabetes mellitus, hypertension, possible lower back pain secondary to lumbago, and marked obesity, with a history of chronic asthma, as well as the possibility of arthritis of the right knee joints and hypertensive and cardiovascular disease. (R. 440.)

Dr. David Gelber, a state psychological examiner, evaluated Plaintiff that same month. (R. 448–51.) He noted that she was "neatly dressed and groomed," but stood and walked slowly, with "clear discomfort and mobility impairment." (R. 448.) Plaintiff reported having panic attacks two or three times a day, but that their duration had decreased to only around five minutes since beginning medication. (R. 450.) For her daily activities, she reported socializing with family, handling her own personal care, and preparing simple meals using a microwave, but otherwise watching television all day. (R. 451.) Dr. Gelber recorded that Plaintiff was cooperative and that her speech volume and intensity were "unremarkable and appropriate." (R. 450.) Her mood was "moderately depressed," her cognitive, memory, and concentration screenings were "average," her general intelligence was estimated to be "average," and she exhibited mildly impaired insight and moderately impaired judgment. (R. 449–51.) Dr. Gelber diagnosed Plaintiff with a panic disorder, agoraphobia, and chronic adjustment disorder with a depressed mood. (R. 451.) Joan F. Joynson, Ph.D., relied on Dr. Gelber's report to assess Plaintiff's ability to function mentally in February 2015 and concluded that Plaintiff could sustain work involving simple tasks and moderately complex instructions, was "best suited for work having low public contact," and could "adapt to workplace changes for simple work functions." (R. 137–41.)

In June 2016, Plaintiff saw a primary care physician, who noted that her breathing was "much better," and that her back pain was under control. (R. 483.) The following month, Plaintiff took part in a sleep study, after which she was diagnosed with obstructive sleep apnea and prescribed a BiPAP machine. (R. 485–92.)

Between March 2017 and January 2018, Plaintiff sought psychiatric treatment for her Bipolar Disorder numerous times at Stress Care of New Jersey. (*See* R. 493–516.) In her first visit, she reported trouble sleeping, depression, anxiety, and mood swings. (R. 516.) During her

treatment, she was prescribed medications to treat symptoms of aggression, depression, anxiety, and insomnia. (R. 495, 501, 513.) In most of her appointments, her mental status examinations noted that her appearance and grooming were "good" or "fair," behavior was "cooperative" (although sometimes also "anxious"), mood was "anxious," affect was "appropriate," thought process was "coherent," cognition was "intact" or "oriented," and insight and judgment were "fair." (R. 494–517.) Although Plaintiff often complained of depression, anxiety, and insomnia, particularly when her mother was ill, (R. 497, 500, 503), she also noted in several appointments that her medications were working, as evidenced by her panic attacks decreasing and insomnia being well controlled. (*See* R. 500, 506, 509, 512.) She also largely denied mania, hypomania, memory difficulty, speech difficulty, headaches, seizures, suicidal ideations, delusions, and hallucinations, although she reported occasional obsessions (*See* R. 494, 497, 506, 513.)

### C. Hearing Testimony

At the first supplemental hearing on December 21, 2016, ALJ Allard heard testimony from Plaintiff as well as expert testimony from Mary Vasishth, a vocational expert. (R. 68.) Plaintiff alleged that she could not work because she had pain while sitting or standing "for long periods of time," and that the cane she carried made her a less appealing job candidate. (R. 77.) Although Plaintiff admitted that her doctor did not prescribe her a cane, she alleged he told her that the cane would "help." (R. 78.) Plaintiff testified that she could not sit or stand for long periods of time but could walk uninterrupted for ten to fifteen minutes, stand for fifteen minutes with assistance from the cane, and sit for twenty minutes before feeling any discomfort. (R. 76–78.) She said that the only time she left the house was for doctors' appointments, and that she was driven to them by medical transportation. (R. 79.) She testified that her mother bought her groceries, went to the laundromat, and helped her with hygiene, and that she could not cook or wash dishes. (R. 81–83.)

However, she acknowledged that she could dress herself, apart from putting on her socks and shoes, and testified that her depression and knee pain improved with medication. (R. 84–87, 90.)

At the second hearing on July 12, 2018, ALJ Allard heard testimony from Plaintiff as well as expert testimony from Andrew Vaughn ("VE Vaughn"), a vocational expert. (R. 37-38.) VE Vaughn testified that an individual with Plaintiff's vocational background and RFC—whom the ALJ found could perform sedentary work, with the ability to occasionally climb ramps and stairs, balance on wet moving or uneven surfaces, kneel, stoop, and crouch—would be capable of working as a press operator and spotter. (R. 41–42.)[1, 2] VE Vaughn further testified that such occupations would remain open even to someone who could not stoop. (R. 42.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere

---

[1] Plaintiff's RFC finding was largely the same as in the first hearing, except that the ALJ noted that Plaintiff could occasionally stoop. (R. 40.)

[2] VE Vaughn initially testified that Plaintiff could also perform the occupations of call-out operator and order clerk but removed those occupations when the ALJ specified that Plaintiff could not perform tasks involving direct customer service. (R. 41-42.) The ALJ appears to have mistakenly included the job of order clerk as a representative occupation in her decision, (*see* R. 29), but this oversight is not material because the press operator and spotter jobs suffice. *See Zirnsak v. Colvin*, 777 F.3d 607, 620 (3d Cir. 2014) (explaining that the erroneous inclusion of an occupation was harmless where the ALJ also cited other occupations that amounted to a significant number of jobs).

7

scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

## B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the

claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the

individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

### A.

On November 5, 2018, ALJ Allard issued a decision concluding that Plaintiff was not disabled from January 1, 2008 (the "alleged onset date") through the date of the decision. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since the alleged onset date. (R. 17.) At step two, she found that Plaintiff had the following severe

11

impairments: insulin dependent diabetes, hypertension, arthritis, chronic asthma, extreme morbid obesity, sleep apnea, anxiety disorder, and depressive disorder. (*Id.*)

At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing, even when her obesity was factored in. (R. 17–20.) Plaintiff's arthritis did not meet the requirements of Listing 1.02 because her spine showed no deformity, she was able to use her upper extremities for both fine and gross manipulation, and she was able to walk independently at a reasonable pace, despite the swelling in her knees. (R. 18.) Plaintiff's asthma did not meet the requirements of Listing 3.03 because she had not undergone any hospitalizations or emergency care for asthma. (*Id.*) The ALJ also considered Plaintiff's hypertension and diabetes, which do not have specific listings but may be considered in light of their impact on the claimant's body. (R. 18-19.) Plaintiff's hypertension did not meet the step three requirements because no specific body system was sufficiently affected as to meet a listing, and Plaintiff's diabetes did not meet the step three requirements because she did not show evidence of end organ damage or diabetes complications. (R. 18.) The ALJ also noted that Plaintiff's asthma and sleep apnea were largely controlled with treatment and accounted for in the RFC assessment. (R. 22–23.)

In addition, the ALJ found that Plaintiff's mental impairments did not meet or medically equal the relevant listings, specifically Listings 12.04 (Depressive, Bipolar and Related Disorders) and 12.06 (Anxiety and Obsessive-Compulsive Disorders). (R. 19.) For these listings, a claimant must prove that she meets both the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria. *See* 20 C.F.R. 404, Subpart P, Appendix 1 §§ 12.04, 12.06; *see also id.* § 12.02(A)(2). The "paragraph B" criteria require at least one extreme or two marked limitations in any area of functioning. *See id.* §§ 12.04(B) and 12.06(B); *see also id.* § 12.00(A)(2)(b). The

"paragraph C" criteria require that the mental disorder be "serious and persistent," and supported by evidence of both medical treatment and marginal adjustment. *See id.* §§ 12.04(C) and 12.06(C); *see also id.* § 12.00(A)(2)(c). ALJ Allard found that Plaintiff's limitations in understanding, remembering, and applying information were only "mild" based on her testimony and treatment notes. (R. 19.) Her abilities to interact with others; concentrate, persist, or maintain pace; and adapt and manage herself were only moderately limited. (R. 19–20.) Because Plaintiff's mental impairments did not cause two "marked' limitations or one "extreme" limitation, the paragraph B criteria were not satisfied. (R. 20.) The paragraph C requirements were not met because Plaintiff demonstrated that she was able to function outside of the home and that she had more than minimal capacity to adapt to changes in the environment or some new demands. (*Id.*)

When assessing Plaintiff's RFC, the ALJ found that she could perform sedentary work, with the ability to occasionally climb ramps and stairs, balance on wet moving or uneven surfaces, kneel, stoop, and crouch. (*Id.*) In addition, ALJ Allard found that Plaintiff could understand and execute simple and routine tasks and have incidental contact with the public, but she could not perform tasks that involve direct customer service. (*Id.*) At step four, the ALJ found that Plaintiff had no past relevant work. (R. 28.) Lastly, at step five, the ALJ relied on VE Vaughn's testimony to find that Plaintiff was able to perform work that existed in significant numbers in the national economy, including as a press operator and spotter. (R. 29.) ALJ Allard therefore concluded that Plaintiff was not disabled under the Act during the relevant period. (*Id.*)

B.

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision. (*See* D.E. 12 ("Pl. Br.") at 1.) Plaintiff asserts that the ALJ erred in the following respects: (1) evaluating the medical equivalence evidence at step three, (2) addressing her obesity, and (3) basing the denial

of benefits on "unresolved conflicts" between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT"), effectively ignoring the Appeals Council's remand order. (*Id.* at 10–11.) This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff argues that ALJ Allard did not consider all severe impairments and compare their joint effect against one of the Listings to determine medical equivalence at step three. (*Id.* at 12–13.) In cases where a party is attacking a government agency's ruling, the party bears the "'the burden of showing that an error was harmful.'" *Davis–Harris v. Comm'r of Soc. Sec.*, Civ. No. 20–1215, 2021 WL 689130, at *1 (D.N.J. Feb. 23, 2021) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). The ALJ is responsible for determining the credibility of the Plaintiff's statements regarding her impairments. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also De Aza v. Comm'r of Soc. Sec.*, Civ. No. 07–6168, 2008 WL 4723778, at *3 (D.N.J. Oct. 24, 2008). When explaining a step three finding, an ALJ is only required to convey that the relevant issues were considered and discuss the evidence enough to allow for "meaningful [judicial] review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Here, Plaintiff's argument fails because she does not identify a specific listing that her impairments medically equal in combination, but simply argues that more discussion was required at step three. (*See* Pl. Br. at 11–26); *Farmer v. Comm'r of Soc. Sec.*, Civ. No. 19-13437, 2020 WL 6620152, at *3 (D.N.J. Nov. 12, 2020) ("Plaintiff bears the burden of proof at step three . . . [and] the Commissioner bears no proof of equivalence."). On review, this Court finds that the ALJ sufficiently discussed the evidence at step three. (R. 17–28.) The ALJ specifically considered Plaintiff's subjective complaints about her pain and weight making her unable to stand for long periods, her alleged need to use a cane, her alleged respiratory problems, and her alleged difficulty interacting with people. (R. 21.) ALJ Allard found that, while Plaintiff's medically determinable

14

impairments could cause her alleged symptoms, her statements concerning the "intensity, persistence and limiting effects" of these symptoms were inconsistent with the medical evidence. (*Id.*) As the ALJ noted, "no treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment nor does evidence show signs or findings that are the same or equivalent to those of any listed impairment." (R. 17.) Indeed, Dr. Patel noted in his examination that Plaintiff was able to walk normally without any assistive device, and even Plaintiff admitted that the cane had not been prescribed to her. (R. 78, 138.) Therefore, this Court concludes that ALJ Allard's findings at step three were supported by substantial evidence.

Second, Plaintiff argues that the ALJ did not sufficiently consider her obesity. (*See* Pl. Br. at 2, 16–22.) An ALJ "must meaningfully consider the effect of a claimant's obesity individually and in combination with her impairments" when assessing a social security claim at step three and beyond. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). However, it is the plaintiff's burden to establish, not just that "obesity *can* impair [her] ability to perform basic work activities," but to specify "*how* her obesity . . . affected her ability to perform basic work activities." *Carter v. Comm'r of Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (emphases in original). Plaintiff did not meet her burden here. While she demonstrated that her obesity has caused her to suffer from medically determinable impairments, she presented no evidence that she could not perform basic activities associated with work. (R. 27.)

In addition, the ALJ considered Plaintiff's obesity on several occasions. At step three, she specifically addressed Plaintiff's obesity before finding that it did not meet one of the listed impairments. (R. 18.) When assessing the impact of Plaintiff's obesity at steps four and five, the ALJ found that her impairments were controlled with treatment and that she showed the ability to walk independently at a reasonable pace as well as normal pulses, reflexes, and sensation, with no

neurological deficits, chest pain, palpitations, or orthopnea. (R. 22.) The ALJ also expressly considered Plaintiff's obesity in combination with her asthma and sleep apnea, finding that Plaintiff's "file does not contain evidence that her obesity alone has caused her to be unable to work, nor does it show that in conjunction with her other impairments, it has disabled her." (R. 26–27.) Therefore, this Court concludes that the ALJ sufficiently considered Plaintiff's obesity.

Third, Plaintiff argues that the ALJ substantially ignored the Appeals Council's remand order when she based the denial of benefits on allegedly "unresolved conflicts" between the VE's testimony and the DOT. (*See* Pl. Br. at 36–37.) Plaintiff bases her assertion of a conflict on SSR 96–9P, which states that "a *complete* inability to stoop would significantly erode the unskilled sedentary occupations base and a finding that the individual is disabled would usually apply." 61 Fed. Reg. 34478–01 (Jul. 2, 1996) (emphasis in original). She argues that VE Vaughn's finding that there are sedentary jobs Plaintiff can perform that do not require stooping "directly contradicts" this regulation. (Pl. Br. at 37–40.) However, Plaintiff's understanding of SSR 96–9P is incorrect. SSR 96–9P explicitly states that, while "a RFC for less than a full range of sedentary work reflects very serious limitations," it "does not necessarily equate with a decision of disabled." 61 Fed. Reg. at 34479; *see Louis v. Comm'r of Soc. Sec.*, 808 F. App'x 114, 118 n.3 (3d Cir. 2020) (citations omitted). Here, VE Vaughn identified two occupations that Plaintiff can perform—press operator and spotter—that require no stooping at all. (R. 42.)[3] Accordingly, there is no conflict between the DOT and VE Vaughn's testimony, and the ALJ's decision was based on substantial evidence.

---

[3] Furthermore, after Plaintiff's case was remanded, ALJ Allard found that Plaintiff was able to occasionally stoop. (*See* R. 20, 27.) This finding is supported by Dr. Patel's evaluation notes, which explicitly stated that Plaintiff could "occasionally" stoop, (R. 138), and there is no medical evidence that suggests that a finding of occasional stopping is unreasonable. Although Plaintiff argues that the ALJ should not have changed her initial "no stooping" limitation to "occasional stooping" after remand, the Appeals Council vacated the original decision and ordered the ALJ to issue a new decision, giving "further consideration to the claimant's maximum residual functional capacity." (R. 163–64.) Thus, the ALJ was entitled to make new findings based on the medical evidence.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that ALJ Allard's factual findings were supported by substantial credible evidence in the record and that her legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties